**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ronald Norris, | No. CV-20-01212-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Shenzhen IVPS Technology Company Limited, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff's motion for default judgment.  (Doc. 39.)  For the following reasons, the Court concludes that Plaintiff is entitled to default judgment in an amount to be determined following an evidentiary hearing on damages.

## BACKGROUND

This is an action against Defendant Shenzhen IVPS Technology Company Ltd. ("Shenzhen IVPS"),[1] a Chinese corporation that, according to its website, "specializes in electronic cigarette research and development, production, and sale in all markets worldwide."  (Doc. 22-1 at 2.)  Shenzhen IVPS's "leading brand" is SMOK®.  (*Id.* at 4.)

---

[1]     The complaint also names Shenzhen Smok Technology Company Ltd. ("Shenzhen Smok") as a defendant.  (Doc. 1.)  Plaintiff asserts that he has since "learned that Shenzhen Smok no longer exists, if it ever did."  (Doc. 22 at 4.)  *Cf. Sarieddine v. D&A Distribution, LLC*, 2018 WL 5094937, *1 (C.D. Cal. 2018) (indicating that Shenzhen IVPS was formerly known as Shenzhen Smok and referring to Shenzhen IVPS as "Smok.").  The complaint also lists various unknown defendants (XYZ Corporations I-III; ABC Partnerships I-III; John and Jane Does I-III).  All of the defendants other than Shenzhen IVPS have been dismissed.  (Doc. 31.)

In spring 2018, Plaintiff's aunt placed an online order for an e-cigarette from Shenzhen IVPS. (Doc. 1 ¶ 10.) The online order was placed in Arizona, and the e-cigarette was delivered to Arizona. (*Id.*) Plaintiff's aunt then gave the e-cigarette to Plaintiff as a gift. (*Id.*) Two months later, on or about June 19, 2018, while Plaintiff was sleeping in his home with the e-cigarette charging, the e-cigarette exploded, "causing a substantial fire" in which Plaintiff "was severely injured." (*Id.* ¶ 13.)

On June 17, 2020, Plaintiff filed the complaint, which asserts claims of strict liability and negligence. (Doc. 1.) Afterward, Plaintiff sought and received several extensions of the service deadline due to the complexity of effecting service in China pursuant to the Hague Service Convention. (Docs. 6-11.)

On April 28, 2021, Shenzhen IVPS was served. (Doc. 18-1 at 2.)

Shenzhen IVPS's deadline to file an answer was May 19, 2021. Fed. R. Civ. P. 12(a)(1)(A)(i). Shenzhen IVPS failed to file an answer by the deadline.

On October 12, 2021, Plaintiff filed an application for entry of default against Shenzhen IVPS (Doc. 12) and a certificate of service (Doc. 12-1), which was in Chinese.

On October 18, 2021, the Court issued an order requiring Plaintiff to submit an English translation of the certificate of service. (Doc. 13.) The Court explained that without an English translation, "the Court has no way of verifying that service has, in fact, been effected," and without adequate proof of service, the Clerk could not enter default. (*Id.* at 2.) The Court further stated that "after Plaintiff obtain[ed] a translation of the certificate of service and applie[d] for and obtain[ed] entry of default from the Clerk," Plaintiff could file a motion for default judgment. (*Id.* at 2-3.)

In April 2022, the Court ordered Plaintiff to provide a status update, as he had not yet filed the English translation. (Docs. 14, 15.) On April 27, 2022, Plaintiff filed a status update in which he stated that he was "in the process of having the proof of service translated fully into English" and expected to have a translation and affidavit in the first week of May 2022. (Doc. 16.)

On May 24, 2022, Plaintiff filed a renewed application for entry of default against

1   Shenzhen IVPS, this time attaching an English translation of the certificate of service.

2   (Docs. 18, 18-1.)

3          On June 1, 2022, the Clerk entered default.  (Doc. 19.)

4          On June 21, 2022, Shenzhen IVPS filed a motion to set aside the default.  (Doc.

5   21.)[2]

6          On November 1, 2022, the Court denied the motion to set aside default.  (Doc. 37.)[3]

7          On November 23, 2022, Shenzhen IVPS filed a motion to reconsider the Court's

8   November 1, 2022 order.  (Doc. 38.)

9          On December 20, 2022, the Court denied the motion to reconsider.  (Doc. 40.)

10         On December 8, 2022, Plaintiff filed the pending motion for default judgment.

11  (Doc. 39.)

12         On December 20, 2022, Shenzhen IVPS filed a response.  (Doc. 41.)  Plaintiff did

13  not file a reply.

14                                    **DISCUSSION**

15  I.    <u>Default Judgment Standard</u>

16         The "decision whether to enter a default judgment is a discretionary one."  *Aldabe*

17  *v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The following factors, known as the *Eitel*

18  factors, may be considered when deciding whether default judgment is appropriate:  (1) the

19  possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of

20  the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6)

21  whether the default was due to excusable neglect, and (7) the policy favoring decisions on

22  the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  "[D]efault judgments

23  are ordinarily disfavored," such that "[c]ases should be decided upon their merits whenever

24  reasonably possible."  *Id.* at 1472.

25  _____

26  [2]     The motion to set aside default was originally combined with a motion to dismiss
    for lack of jurisdiction and, alternatively, a motion for a more definite statement.  (Doc.
27  21.)  These motions, and two supporting declarations, were subsequently withdrawn.  (Doc.
    35.)

28  [3]     The November 1, 2022 order contains a more detailed procedural history.  *Norris v.*
    *Shenzhen IVPS Tech. Co. Ltd.*, 2022 WL 16571694, *1-2 (D. Ariz. 2022).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "The district court is not required to make detailed findings of fact." *Id.* "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

II.   The First, Fifth, Sixth, And Seventh *Eitel* Factors

In the order denying Shenzhen IVPS's motion to set aside the default, the Court found that Shenzhen IVPS chose not to participate in this litigation until after default was entered in a manner that "evinces bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process," as Shenzhen IVPS—"a sophisticated party with its own in-house counsel, established relationships with American litigation counsel, and experience litigating in American federal court"—unconvincingly claimed to believe a response to the complaint was not yet due and then "essentially sat back and enjoyed a 13-month delay in this litigation while watching Plaintiff's efforts [to obtain entry of default against Shenzhen IVPS] play out on the docket." (Doc. 37 at 7-8, internal quotation marks omitted.)

The Court further found that Plaintiff had been prejudiced by the delay, as Shenzhen IVPS failed "to substantively address Plaintiff's specific assertions regarding prejudice, including the allegation that '[o]ne of Defendant's social media accounts, Smok_Tech, has been taken down and no longer exists,'" and, more broadly, because the lengthy and unnecessary delay increased the risk that witnesses' memories had faded and evidence grown stale. (*Id.* at 11.) Additionally, the Court found that Shenzhen IVPS did not meet its burden of demonstrating it had a meritorious defense. (*Id. See also* Doc. 40 [denying reconsideration].) As such, the November 1, 2022 order stated as follows:

> In light of the findings and conclusions in this order, it is clear that the first, fifth, and sixth factors can be resolved in favor of granting default judgment. This order establishes that Plaintiff would be prejudiced in the absence of default judgment. There can be no factual dispute because the facts in the complaint are deemed true. The default was due to Shenzhen IVPS's culpable conduct, not to excusable neglect.

1

2

3

4

5

6

7

8

9

     The seventh factor always weighs against granting default judgment but "is not dispositive." *PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

     Thus, Plaintiff's motion for default judgment should focus on the second, third, and fourth factors.  Plaintiff's motion also should demonstrate "entitlement to the sought amount of damages" by providing detailed affidavits and supporting exhibits.  (Doc. 13 at 4.)  Shenzhen IVPS's response may not challenge the truth of the well-pleaded allegations in the complaint, which are taken as true due to the default, but it may challenge whether those allegations, taken as true, entitle Plaintiff to relief.  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Shenzhen IVPS may also challenge Plaintiff's evidence as to damages.  Either side may request a hearing.  Any such request may or may not be granted, at the Court's discretion.

10

(Doc. 37 at 12-13.)

11

12

     In accordance with these instructions, Plaintiff's motion for default judgment focuses on the second, third, and fourth *Eitel* factors and presents evidence as to damages.

13

III.    <u>The Merits Of The Claims And Sufficiency Of The Complaint</u>

14

15

16

17

18

     The merits of the claims and the sufficiency of the complaint "are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted).  "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important."  *Id.*

19

A.    **Facts Established By The Complaint**

20

21

22

23

     As noted, "the general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin*, 285 F.3d at 906.  Therefore, the Court accepts as true the following facts alleged in the complaint:

24

25

1.  In spring 2018, Plaintiff's aunt purchased an e-cigarette from Shenzhen IVPS. (Doc. 1 ¶ 10.)

26

2.  Shenzhen IVPS designed and/or manufactured the e-cigarette.  (*Id.* ¶ 12.)

27

28

3.  Once it was delivered, Plaintiff's aunt gave Plaintiff the e-cigarette as a present.  (*Id.* ¶ 10.)

1    4.  On June 19, 2018, Plaintiff was sleeping in his residence while the e-cigarette was

2          charging.  (*Id.* ¶ 13.)

3    5.  While charging, the e-cigarette exploded, causing a fire in which Plaintiff was

4          injured.  (*Id.*)

5     B.   **Strict Liability**

6        The complaint asserts two claims—Count One is "Product Liability—Strict

7 Liability" and Count Two is "Negligence."  (Doc. 1 at 4-6.)  However, Plaintiff's motion

8 for default judgment focuses almost exclusively on strict liability.  (Doc. 39 at 9-10.)

9 Accordingly, this order will consider only Plaintiff's strict liability claim.

10       "Strict liability is a public policy device to spread the risk from one to whom a

11 defective product may be a catastrophe, to those who marketed the product, profit from its

12 sale, and have the know-how to remove its defects before placing it in the chain of

13 distribution."  *Tucson Indus., Inc. v. Schwartz*, 501 P.2d 936, 939-40 (Ariz. 1972).

14 "[T]hose persons who are in the chain of placing defective goods on the market" "should

15 bear the loss," rather than the "injured member of the public," because "those involved in

16 the chain of marketing can distribute the risk between themselves by means of insurance

17 and indemnity agreements."  *Id.* at 939.  "[P]ublic policy demands that responsibility be

18 fixed wherever it will most effectively reduce the hazards to life and health inherent in

19 defective products that reach the market," "[e]ven if there is no negligence."  *Id.*  Arizona's

20 strict liability policy rests on the following justification:

21           [T]he seller, by marketing his product for use and consumption, has
22           undertaken and assumed a special responsibility toward any member of the
            consuming public who may be injured by it. . . .  [T]he public has the right
23           to and does expect, in the case of products which it needs and for which it is
            forced to rely upon the seller, that reputable sellers will stand behind their
24           goods. . . .  [P]ublic policy demands that the burden of accidental injuries
            caused by products intended for consumption be placed upon those who
25           market them, and be treated as a cost of production against which liability
            insurance can be obtained. . . .  [T]he consumer of such products is entitled
26           to the maximum of protection at the hands of someone, and the proper
            persons to afford it are those who market the products.

27 *Id.* (quoting comment (c) of the Restatement (Second) of Torts § 402A).

28        A "product liability action" under Arizona law is "any action brought against a

manufacturer or seller of a product for damages for bodily injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, sale, use or consumption of any product, the failure to warn or protect against a danger or hazard in the use or misuse of the product or the failure to provide proper instructions for the use or consumption of any product." A.R.S. § 12-681(5). A "seller" is defined as "a person or entity, including a wholesaler, distributor, retailer or lessor, that is engaged in the business of leasing any product or selling any product for resale, use or consumption," and a "manufacturer" is defined as "a person or entity that designs, assembles, fabricates, produces, constructs or otherwise prepares a product or component part of a product before its sale to a user or consumer, including a seller owned in whole or significant part by the manufacturer or a seller owning the manufacturer in whole or significant part." *Id.* § 12-681(3), (9).

"[I]n Arizona the application of strict liability does not hinge on the technical limitations of the term seller or manufacturer." *Torres v. Goodyear Tire & Rubber Co.*, 786 P.2d 939, 943 (Ariz. 1990). Rather, "the term 'seller' is a term designating a class (one in the business of placing products in the stream of commerce) rather than a designation of limitation." *Id.* "[T]he terms 'manufacturer' and 'seller' [are used] almost interchangeably in applying the [strict liability] doctrine." *Id.* at 942. The term "seller" "has been interpreted expansively when it serves the policies underlying strict liability." *Antone v. Greater Arizona Auto Auction*, 155 P.3d 1074, 1077 (Ariz. Ct. App. 2007). *See also Jordan v. Sunnyslope Appliance Propane & Plumbing Supplies Co.*, 660 P.2d 1236, 1242 (Ariz. Ct. App. 1983) ("It is enough that [a seller] is anywhere in the chain of supplying goods to the public, that he is in the business of supplying the goods and that the item reaches the consumer without substantial change in its condition."). "Liability for a defective product extends to all those involved in its distribution, including manufacturers of component parts, dealers, distributers, or retail sellers." *State Farm Ins. Cos. v. Premier Manufactured Sys., Inc.*, 142 P.3d 1232, 1235 (Ariz. Ct. App. 2006).

"A prima facie case of strict products liability is established by showing that when

the product left the defendant's control, it was in a defective condition that made it unreasonably dangerous and the defect was a proximate cause of plaintiff's injuries." *Jimenez v. Sears, Roebuck & Co.*, 904 P.2d 861, 864 (Ariz. 1995) (emphasis omitted). Affirmative defenses include, *inter alia*, state of the art, product modification, and product misuse.  A.R.S. § 12-683.[4]

Here, Plaintiff asserts that Shenzhen IVPS is "strictly liable for a manufacture and/or a design defect as the product did not behave as it should because the e-cigarette ignited, causing a fire."  (Doc. 39 at 9.)  Plaintiff further asserts that an e-cigarette, "in order to be used, must be charged via electricity," and if charging the device "causes it to spontaneously ignite, of course it should be considered a defective and unreasonably dangerous."  (*Id.*)  Finally, Plaintiff asserts that "it is obvious the defect, the spontaneous ignition, is the proximate cause of Plaintiff's injuries" as he suffered burns "as a direct result of the subject e-cigarette igniting."  (*Id.* at 10.)

Shenzhen IVPS responds that the allegations in the complaint, taken as true, are inadequate to establish that Shenzhen IVPS is strictly liable.  (Doc. 41.)

First, Shenzhen IVPS argues that the allegations in the complaint do not establish that the e-cigarette that injured Plaintiff "was manufactured, sold or otherwise connected in any way with Shenzehn [sic]."  (*Id.* at 4.)

This contention lacks merit.  The complaint alleges that Plaintiff's aunt "ordered online" an e-cigarette "from" Shenzhen IVPS (Doc. 1 ¶ 10) and that Shenzhen IVPS designed and/or manufactured the e-cigarette (*id.* ¶ 12).  Taking these allegations as true, Shenzhen IVPS was both a "seller" and a "manufacturer" under Arizona law and was indisputably in the chain of production and sales for the e-cigarette at issue.  Arizona's broad definition of "manufacturer" includes the entity that designs a product as well as the entity that fabricates/assembles it.  A.R.S. § 12-681(3).  The facts alleged in the complaint establish that Shenzhen IVPS is an entity that did one or both of these things, such that it is a "manufacturer."  Furthermore, the Court has already found that the allegation that

---

[4]        Shenzhen IVPS did not timely raise any of these defenses.  (Doc. 40 at 11.)

1   Plaintiff's aunt purchased the e-cigarette "from" Shenzhen IVPS is sufficient to establish

2   that "Plaintiff's claim arises out of Shenzhen IVPS's direct sale" of the e-cigarette to

3   Plaintiff's aunt.  (Doc. 40 at 10.)  Thus, Shenzhen IVPS is also a "seller."  A.R.S. § 12-

4   681(9).[5]

5        Next, Shenzhen IVPS suggests that the e-cigarette was not described well enough

6   in the complaint.  (Doc. 41 at 4 ["Plaintiff did not allege the product model, identification

7   number, or any other identifying factors of the subject e-cigarette."].)  But Shenzhen IVPS

8   cites no law for its contention that a complaint must allege such details to avoid dismissal.

9   Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain

10  statement of the claim showing that the pleader is entitled to relief."  This pleading standard

11  requires "factual content that allows the court to draw the reasonable inference that the

12  defendant is liable for the misconduct alleged," such that a mere "formulaic recitation of

13  the elements of a cause of action will not do," but it "does not require detailed factual

14  allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  Plaintiff's factual allegations

15  establish that Shenzhen IVPS sold an e-cigarette that exploded while charging, starting a

16  fire that injured Plaintiff.  This is sufficient factual content to establish liability.[6]

17       Shenzhen IVPS further asserts that the allegations in the complaint fail to establish

18  that the e-cigarette was in a defective condition that made it unreasonably dangerous.  (Doc.

19  41 at 5-7.)  According to Shenzhen IVPS, "Plaintiff alleges *only* that at some point while

20  he was sleeping, the subject product[,] which was charging, exploded causing a fire and

21  injuries to his person."  (*Id.* at 6, emphasis added.)  Shenzhen IVPS appears to argue that

22  ─────────────

[5]      Shenzhen IVPS asserted, in its withdrawn-then-reasserted motion to dismiss for lack

23  of personal jurisdiction, that it sells goods to distributors, rather than directly to consumers.
    (Doc. 40 at 7.)  Uncontroverted evidence demonstrates that this is false.  (*Id.* at 7-10.)

24  Nevertheless, even assuming that Shenzhen IVPS is a wholesaler that does not sell directly
    to consumers, it would still be a "seller" under Arizona law.  A.R.S. § 12-681(9).

25  [6]      If Shenzhen IVPS had not defaulted, it could have disputed whether it had anything
    to do with the subject e-cigarette, and details regarding the e-cigarette would have been

26  discoverable and would have been relevant to whether Shenzhen IVPS was in the chain of
    distribution.  However, Shenzhen IVPS's default conclusively establishes as fact that the

27  e-cigarette in question was purchased "from" Shenzhen IVPS.  With that established, it is
    not necessary to know *which kind* of e-cigarette, from Shenzhen IVPS's line of various e-

28  cigarettes, injured Plaintiff.  Whether it was this model, that model, or another, liability is
    established.

1  an electronic device that explodes into flame while charging does not have a defect that

2  makes it unreasonably dangerous.  This is an unpersuasive argument.

3  There are "[t]wo models of inquiry" available to decide whether a product is "in a

4  defective condition and unreasonably dangerous"[7]—the "consumer expectation test" and

5  the "risk/benefit analysis."  *Brethauer v. Gen. Motors Corp.*, 211 P.3d 1176, 1182 (Ariz.

6  Ct. App. 2009).  "[B]oth the consumer expectation test and the risk/benefit analysis test

7  can embody strict liability because the manufacturer-designer may be held liable in

8  situations where due or even utmost care would not have prevented the design hazard."

9  *Dart v. Wiebe Mfg., Inc.*, 709 P.2d 876, 880 (Ariz. 1985).

10  "Under the 'consumer expectation test,' the fact-finder determines whether the

11  product 'failed to perform as safely as an ordinary consumer would expect when used in

12  an intended or reasonable manner.'"  *Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 962

13  (Ariz. Ct. App. 2003).  "If so, the product was in a defective condition and unreasonably

14  dangerous."  *Id.*  Alternatively, if "the ordinary consumer would not form an expectation,"

15  an "alternative method of determining unreasonable danger" is a "risk/benefit analysis" in

16  which various factors are considered "to decide whether the benefits of the challenged

17  design outweigh the risk of danger inherent in such design."  *Dart*, 709 P.2d at 879-81

18  (internal quotation marks omitted).  The risk/benefit factors include "(1) the usefulness and

19  desirability of the product, (2) the availability of other and safer products to meet the same

20  need, (3) the likelihood of injury and its probable seriousness, (4) the obviousness of the

21  danger, (5) common knowledge and normal public expectation of the danger (particularly

22  for established products), (6) the avoidability of injury by care in use of the product

23  (including the effect of instructions or warnings), and (7) the ability to eliminate the danger

24  without seriously impairing the usefulness of the product or making it unduly expensive."

25  *Id.* at 879-80.

26  _____

27  [7]      Whether a product "is in a defective condition" and whether it is "unreasonably dangerous" are different concepts, but "the defectiveness and unreasonable danger assessments are often intertwined.  *Sw. Pet Prod., Inc. v. Koch Indus., Inc.*, 273 F. Supp.

28  2d 1041, 1054 (D. Ariz. 2003).  "Accordingly, Arizona courts often collapse the [defectiveness and unreasonable danger assessments] into one inquiry."  *Id.*

Here, the Court has no trouble concluding that the complaint alleges sufficient facts to establish liability under the consumer expectation test. An e-cigarette is an electronic device that must be charged before it can be used. Today's consumers own many such devices: cell phones, laptops, portable audio speakers, power tools, plug-in hybrid cars— the list goes on and on. Some of these devices are more dangerous than others while being *used*. But consumers expect that all of these devices are safe while being *charged*. An electronic device, including an e-cigarette, that explodes while charging fails "to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner." *Golonka,* 65 P.3d at 962.

Moreover, even if the consumer expectation test were not satisfied, the Court would have no trouble concluding that an e-cigarette that explodes while charging fails the risk/benefit analysis. The usefulness and desirability of the product is relatively low, as the general purpose of an e-cigarette is to inhale nicotine, a harmful substance. Other e-cigarettes (that do not explode when charging) are available to meet the same need. The likelihood of injury from an e-cigarette that explodes into flame when charging is very high, as is the probable seriousness of injury. The danger is not obvious, as nothing about an e-cigarette suggests to a user that charging it might cause an explosion, and no one expects an e-cigarette to explode while charging. There is no way to use an e-cigarette without charging it, so it is impossible to avoid the danger while using the product via heightened "care." Finally, the presence of other e-cigarettes in commerce that do not explode while charging suggests that it is possible to eliminate the danger without seriously impairing the usefulness of the product or making it unduly expensive. In sum, no reasonable seller or manufacturer would put an e-cigarette on the market with the knowledge that it explodes while charging.

Thus, both models of inquiry lead to the same conclusion. The facts established by default establish that the subject e-cigarette was defective and unreasonably dangerous.

Shenzhen IVPS also notes that the complaint does not allege "whether the subject product was damaged prior to the incident; the manner in which Plaintiff was charging the

device; or whether he was charging the device with a compatible charger." (Doc. 41 at 6.) In making this observation, Shenzhen IVPS is effectively attempting to assert affirmative defenses—alteration and misuse, A.R.S. § 12-683(2), (3)—and insisting that Plaintiff should have pleaded facts negating these affirmative defenses. But Plaintiff was not required to do so. "A complaint need not anticipate an affirmative defense." *Shepherd v. Costco Wholesale Corp.*, 482 P.3d 390, 393 (Ariz. 2021) (cleaned up). *See also Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1987 n.9 (2017) ("[A]n affirmative defense to a plaintiff's claim for relief [is] not something the plaintiff must anticipate and negate in her pleading."); *Foremost-McKesson Corp. v. Allied Chem. Co.*, 680 P.2d 818, 822 (Ariz. Ct. App. 1983) ("A plaintiff in a negligence action cannot be required to affirmatively plead and prove the negative of an affirmative defense, e.g., that it was not contributorily negligent."). By defaulting, Shenzhen IVPS forfeited its opportunity to plead and prove alteration, misuse, or any other affirmative defense. The complaint is not deficient for failing to plead facts intended to negate these potential defenses.[8]

Nor are alteration and misuse evident from the facts alleged in the complaint and established as true by the default. The complaint alleges that Plaintiff was charging the device. (Doc. 1 ¶ 13.) This is an appropriate and indeed necessary "use" of the device. The complaint also alleges that Plaintiff's aunt ordered the e-cigarette "[a]pproximately two months prior" to the incident and gave him the e-cigarette "[o]nce it was delivered." (*Id.* ¶ 10.) The word "once," when used as a conjunction, means "as soon as." Merriam-Webster Dictionary, *available at* https://www.merriam-webster.com/dictionary/once. The relatively short amount of time between the e-cigarette's delivery and its explosion supports the inference that the defect existed before it left Shenzhen IVPS's control. "Arizona courts have allowed plaintiffs to rely on circumstantial evidence to establish a

---

[8]     For what it's worth, Plaintiff explicitly alleges that the defect existed "at the time of [the e-cigarette's] design and/or manufacture." (Doc. 1 ¶ 19.) Shenzhen IVPS asserts that this "is not a factual allegation that the Court must deem admitted on default." (Doc. 41 at 7.) This illustrates the difficulty of pleading a negative—there is often no way to plead negation of an anticipated affirmative defense with factual allegations that are not conclusory, as it is inherently difficult to provide specific facts regarding what did *not* happen.

defect that existed at the time the product left the defendant's control caused the injuries." *Philadelphia Indem. Ins. Co. v. BMW of N. Am. LLC*, 2015 WL 5693525, *15 (D. Ariz. 2015). *See, e.g.*, *Reader v. Gen. Motors Corp.*, 483 P.2d 1388, 1393-94 (Ariz. 1971) ("There will seldom be a case based upon strict liability where a person will be able to testify from his personal knowledge that a particular product was sold in a certain defective condition.  A requirement of direct evidence would effectively deny the theory of [strict liability]."); *Dietz v. Waller*, 685 P.2d 744, 747-48 (Ariz. 1984) ("Plaintiffs, we have held, must be permitted to rely upon circumstantial evidence alone in strict liability cases, because it is unrealistic to expect them to otherwise be able to prove that a particular product was sold in a defective condition. . . .  This would be especially true in cases such as this one where the product has disintegrated or burned up. . . .  [N]o specific defect need be shown if the evidence, direct or circumstantial, permits the inference that the accident was caused by a defect.").  The facts alleged do not demonstrate misuse or alteration and indeed support the inference that there was none.

Shenzhen IVPS next argues that the complaint "does not establish that an *informational* defect was a proximate cause of" Plaintiff's injuries.  (Doc. 41 at 8, emphasis added.)  But informational defects (failure to warn) are simply one kind of defect.  "There are three categories of defects in strict products liability actions: manufacturing defects; design defects; and informational defects in regard to instructions and warnings."  *Sw. Pet Prod.*, 273 F. Supp. 2d at 1051.  The complaint alleges that the subject e-cigarette "was in an unreasonably dangerous condition at the time of its design and/or manufacture *and* [Shenzhen IVPS] failed to give a proper warning or notice of its dangerous condition to consumers and others who encounter the products in the stream of commerce, specifically including Plaintiff."  (Doc. 1 ¶ 19, emphasis added.)  In other words, the complaint alleges that there was both a physical defect (either a design flaw or manufacturing mishap)[9] and

---

[9]     Under the facts of this case, it is not important whether the defect was caused by the e-cigarette's design or manufacture because Shenzhen IVPS was also the seller.  Thus, whether the defect arose during the design process or the manufacturing process, the e-cigarette was "in a defective condition that made it unreasonably dangerous" at the time it left Shenzhen IVPS's control.  *Jimenez*, 904 P.2d at 864.

1  an informational defect.  Even if the allegations regarding the informational defect are

2  deficient, the allegations regarding the design/manufacturing defect are sufficient.  The

3  design/manufacturing defect was obviously a proximate cause of Plaintiff's injuries, and

4  Shenzhen IVPS does not present any argument to the contrary.  *Mather v. Caterpillar*

5  *Tractor Corp.*, 533 P.2d 717, 719-20 (Ariz. 1975) ("In this case . . . , the failure to warn of

6  a defective design is mere surplusage since once appellant proved a right to recover for the

7  design defect . . . the failure to warn of the design defect did not add to her right to

8  recover.").

9       The Court concludes that the complaint is sufficient and the second and third *Eitel*

10  factors—the merits of the claims and the sufficiency of the complaint—favor granting

11  default judgment.

12  IV.   <u>The Amount Of Money At Stake Relative To The Injury Suffered</u>

13       Under the fourth *Eitel* factor, the court generally considers "the amount of money

14  at stake in relation to the seriousness of the defendant's conduct."  *Doe v. United States*,

15  2018 WL 2431774, *5 (D. Ariz. 2018).  "If the sum of money at stake is completely

16  disproportionate or inappropriate, default judgment is disfavored."  *Id*.  When the damages

17  request is large but proportionate to the harm suffered, the request "does not weigh against

18  awarding default judgment."  *Id.* at *6 (requested default judgment award of $10 million

19  was "not overly excessive" relative to the seriousness of the defendant's conduct and the

20  plaintiff's injuries).

21       Plaintiff seeks $1 million in total damages—$229,649.09 for medical expenses and

22  the balance for pain and suffering, including physical pain and self-consciousness

23  regarding the permanent scarring of his body.  (Doc. 39 at 8-9.)  In support of his asserted

24  damages, Plaintiff includes photographs taken by hospital staff documenting some of the

25  burns on his body (*id.* at 5-6) and also provides some of his medical records[10] (Doc. 39-1

26  at 6-26) and medical bills (*id.* at 28-61).  Records from Maricopa Integrated Health System

27

28  _____

[10]    Plaintiff states that his medical records "are extremely voluminous (totaling over 2,200) [pages]."  (Doc. 39 at 8.)

1    indicate that Plaintiff suffered a third-degree burn of his right upper arm, a second-degree

2    burn of his face, a second-degree burn of his chest wall, a burn of his left forearm, acute

3    pain, and impaired mobility. (*Id.* at 14.) Plaintiff states that after his initial treatment, he

4    had follow-up surgeries ("skin grafts") that required additional hospital stays and follow-

5    up. (Doc. 39 at 7-8.) Plaintiff's motion summarizes:

> Plaintiff has incurred a great deal of pain and suffering as a result of this
> incident. Due the severity of his injuries, he was required to be in the hospital
> for almost two weeks. Not only were the initial injuries painful, it was
> necessary for Plaintiff to undergo two skin graft procedures, which require a
> lengthy recovery time. Even after the wounds have heal[ed], Plaintiff has
> been scarred. The scars not only serve as reminder of the traumatic event
> itself, but the pain he long endured. Plaintiff is also extremely self-conscious
> regarding the scars he now bears as a result of the incident.

10   (*Id.* at 8-9.)

11       Shenzhen IVPS states that "[w]hen the amount which Plaintiff seeks to recover is

12   disproportionate, inappropriate, or otherwise unreasonable given the nature of the

13   allegations brought against a defendant, default judgment is disfavored." (Doc. 41 at 9-

14   10.) The Court agrees with this general proposition but notes that Shenzhen IVPS makes

15   no attempt to argue that the amount of damages sought here is, in fact, "disproportionate,

16   inappropriate, or otherwise unreasonable."

17       One million dollars is a sizeable sum of money, but given the nature of the

18   allegations, the requested amount is not disproportionate, inappropriate, or unreasonable.

19   Indeed, juries have awarded much higher sums in similar cases. For example, in *Snelling*

20   *v. Tribal Vapors et al*, 2:19-cv-00686-JB-GJF (D.N.M.), the plaintiff suffered burns on his

21   hands and his left leg when an e-cigarette battery exploded in his pants pocket. (*Snelling*,

22   Doc. 1 ¶¶ 39-42.) The defendants defaulted, and the court granted the plaintiff's motion

23   for default judgment as to Tribal Vapors, the shop that sold the e-cigarette, establishing the

24   shop's liability, and then set a jury trial as to damages. (*Snelling*, Docs. 17, 36.) The

25   plaintiff's medical bills amounted to $176,924.45, and he sought an additional $750,000

26   for pain, disability, emotional distress, disfigurement, future medical expense, and loss of

27   earnings. (*Snelling*, Doc. 17 at 20.) Nevertheless, the jury determined that the amount of

28   money that "fairly and adequately compensate[d]" the plaintiff was $2.5 million. (*Snelling*,

Doc. 51.)  Similarly, in *Ries v. Zolghadr et al.*, No. RIC 1306769 (Cal. Super. Ct. 2015), a jury awarded nearly $1.9 million to a woman whose e-cigarette battery exploded in her lap while being charged, causing second-degree burns on her thighs, buttocks, and hand.  *Jury Awards Woman $1.9 Million for Injuries from Exploding E-Cig Battery*, 31 Westlaw Journal Tobacco Industry 4 (2015).

Shenzhen IVPS mainly focuses its damages arguments on challenging the admissibility of the evidence Plaintiff has presented, stating that the medical bills Plaintiff submitted are "unauthenticated" and lack a "proper foundation," such that they are "inadmissible."  (Doc. 41 at 10.)   However, Shenzhen IVPS has requested an evidentiary hearing on damages, and the Court will grant that request.  (*Id.*)  Any challenges to the admissibility of evidence can be raised at the evidentiary hearing.[11]

Shenzhen IVPS further states that Plaintiff has not provided "a shred of documentary evidence" in support of his request for damages for pain and suffering and emotional distress.  (*Id.*)  This contention is difficult to square with the Court's review of Plaintiff's medical records, which establish that Plaintiff was diagnosed with "acute pain" and "impaired mobility" and include photographs of serious burns that clearly depict a painful condition.  (Doc. 39-1 at 6-26.)  Although it is true that Plaintiff did not submit a declaration establishing "how his life was impacted by the incident" (Doc. 41 at 10), some degree of impact can be inferred from the medical records Plaintiff submitted, and at any rate, more evidence may be adduced at the evidentiary hearing Shenzhen IVPS has requested.

The Court concludes that the fourth *Eitel* factor—the amount of money at stake— does not weigh strongly in favor of or against default judgment.  The damages sought here are certainly significant, but Shenzhen IVPS has not established they are unreasonable or disproportionate.  At any rate, the amount can be determined after an evidentiary hearing. Where the Court has the discretion to reduce the monetary award to a less substantial sum

---

[11]     The Court expresses no opinion, at this time, as to whether Plaintiff's exhibits are admissible.

1  that the Court considers reasonable, if necessary, the fourth *Eitel* factor becomes neutral.

2  *Twitch Interactive, Inc. v. Johnston*, 2018 WL 1449525, *8 (N.D. Cal. 2018).

3  V.    Weighing The *Eitel* Factors

4          The Court has considered all of the *Eitel* factors and concludes that default judgment

5  is warranted.  The fourth factor is neutral, the seventh factor (as always) weighs against

6  default judgment, and all of the other factors strongly weigh in favor of default judgment.

7          Thus, default judgment will be entered, following an evidentiary hearing on

8  damages.

9  VI.    Damages

10         An evidentiary hearing pursuant to 55(b)(2) of the Federal Rules of Civil Procedure

11  would be helpful in resolving the issue of damages.   Evidence will be admissible only as

12  it relates to damages.  Shenzhen IVPS's liability is conclusively established by this order

13  and shall not be relitigated. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir.

14  1990) (district court properly excluded evidence related to liability, "an issue that became

15  irrelevant once the default judgment was entered"); *Henry v. Sneiders*, 490 F.2d 315, 318

16  (9th Cir. 1974) ("Appellant argues that she was precluded from offering evidence at the

17  hearing to determine damages.  Although some evidence was excluded, it would have been

18  relevant only as to liability and, since liability was not then an issue, the evidence was

19  properly excluded as irrelevant.").

20         …

21         …

22         …

23         …

24         …

25         …

26         …

27         …

28         …

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for default judgment (Doc. 39) is **granted**. Judgment shall issue following an evidentiary hearing on damages.

**IT IS FURTHER ORDERED** that the parties shall meet and confer and then, within 14 days of the issuance of this order, identify three days in September 2023 in which they are available for an evidentiary hearing.

**IT IS FURTHER ORDERED** that the parties shall engage in good-faith settlement discussions on the issue of damages and shall file a status report no later than **June 12, 2023.**

Dated this 15th day of May, 2023.

Dominic W. Lanza
United States District Judge